UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

STACY L., )
 )
    Plaintiff, )
 )
    v. ) Case No. 2:21-cv-00180
 )
COMMISSIONER OF SOCIAL SECURITY, )
 )
    Defendant. )

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE
COMMISSIONER AND GRANTING THE COMMISSIONER'S
MOTION TO AFFIRM**
(Docs. 11 & 12)

Plaintiff Stacy Lanpher ("Plaintiff") is a claimant for Social Security Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA") and brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner (the "Commissioner") that she is not disabled.[1] (Doc. 11.) The Commissioner moves to affirm. (Doc. 12.) Plaintiff replied on March 31, 2022, at which time the court took the pending motions under advisement.

After her application for DIB was denied initially and on reconsideration by the Social Security Administration, Administrative Law Judge ("ALJ") Matthew Levin found Plaintiff ineligible for benefits based on his conclusion that she had not been under a disability within the meaning of the SSA from September 15, 2017 through the date of

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ALJ Levin's decision.

Plaintiff identifies two errors in the disability determination: (1) the ALJ failed to make findings regarding her manipulative impairments, particularly as they relate to reaching and handling, and (2) the Appeals Council erred by failing to reverse the ALJ's decision after examining the September 18, 2020 treatment note of Christine Jones, MD, a rheumatologist. Plaintiff seeks remand of her claims for an award of benefits.

Plaintiff is represented by Arthur P. Anderson, Esq. Special Assistant United States Attorney Molly E. Carter represents the Commissioner.

## I.   Procedural History.

Plaintiff filed her initial application for DIB on October 30, 2019, alleging a disability onset date of September 15, 2017. In her application, she claimed the following disabling conditions: spondylosis, spondylolisthesis, depression, anxiety, posttraumatic stress disorder, fibromyalgia, and myocardial infarction. Her claim was denied on March 30, 2020 and upon reconsideration on May 20, 2020. Plaintiff filed a request for a hearing, which was held before ALJ Levin via telephone on September 3, 2020. Plaintiff appeared and was represented by a non-attorney representative. Vocational Expert ("VE") Marian Marracco also appeared and testified at the hearing.

Thereafter, ALJ Levin offered Plaintiff several opportunities to supplement the record:

> After the hearing on September 3, 2020, Ms. Sayles requested additional time to obtain written evidence, including treatment notes for an upcoming appointment on September 18, 2020, and a medical source statement from Dr. Jones. I left the record open until September 25, 2020. By September 30, 2020, these records were not received. Ms. Sayles was contacted and indicated that Dr. Jones was unable to complete a medical source statement. She requested an additional week to submit treatment notes. She was asked to submit this request in writing (Exhibit 19E). No such request was received. No additional treatment notes have been forthcoming as of the date of this decision (October 21, 2020). Accordingly, the record is closed.
>
> It is also noted that Ms. Sayles stated in a pre-hearing memoranda that she would obtain a functional assessment from FNP Wohlberg (Exhibit 17E). At the hearing, Ms. Sayles stated this would not be completed and no functional assessment from FNP Wohlberg would be submitted. Ms. Sayles

2

also stated in the pre-hearing memoranda that she would provide an updated note from Dr. Fisher, the claimant's dermatologist. No such records were submitted and as of October 21, 2020, no request for any extension has been made. The claimant testified that she was to undergo testing regarding the skin condition of alopecia (hair loss), which is not typically associated with work related functional limitations.

(AR 22.)

On October 26, 2020, ALJ Levin issued an unfavorable decision, which Plaintiff timely appealed. Thereafter, she submitted an additional medical record from Dr. Jones. On May 7, 2021, the Appeals Council found that the new medical record did not support a reasonable probability that it would change the outcome of the ALJ's decision and, on that basis, denied further review. As a result, the ALJ's disability determination stands as the Commissioner's final decision.

## II.    ALJ Levin's October 26, 2020 Decision.

Plaintiff was fifty years old at the date of her alleged disability and fifty-three years old as of the ALJ's decision. She has a twelfth grade education and has not worked since September 15, 2017. Her past employment includes work as an automobile detailer and a janitor.

In order to receive DIB under the SSA, a claimant must be disabled on or before the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability

within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (internal quotation marks omitted).

At Step One, ALJ Levin found Plaintiff had not engaged in substantial gainful activity since September 15, 2017, the alleged onset date. At Step Two, he concluded Plaintiff had the following severe impairments: degenerative disc disease, fibromyalgia, major depressive disorder, anxiety disorder, panic disorder, and posttraumatic stress disorder. He also found Plaintiff has a history of diabetes mellitus, hypertension, and alopecia. Both her diabetes and her hypertension were under good control.

At Step Three, ALJ Levin found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. Although there is no specific Listing for fibromyalgia, the ALJ nevertheless considered this impairment in conjunction with other Listings. He concluded the medical record did not support a conclusion that Plaintiff was unable to ambulate or perform fine and gross motor movements effectively. The ALJ further concluded the record lacked evidence of "nerve root compressions characterized by neuro-anatomic distribution of pain," limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and "positive straight-leg raising, or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (AR at 25.)

With regard to Plaintiff's mental impairments, the ALJ found that Plaintiff had a moderate limitation in understanding, remembering, or applying information; a moderate limitation interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a moderate limitation adapting or managing herself. The ALJ concluded that the "'paragraph B'" criteria were not satisfied because Plaintiff did not have at least two marked limitations or one extreme limitation. He also found that the "'paragraph C'" criteria were not present.

At Step Four, ALJ Levin determined Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except she could frequently climb ramps and stairs. She could never climb ladders, ropes, or scaffolds. She could frequently balance and crawl. She could kneel, crouch, and stoop on an unlimited basis. [Plaintiff] could understand, remember, and carry out simple instructions. She could sustain concentration, persistence, and pace for simple tasks over a routine workday and workweek. She could participate in typical social interactions with coworkers and supervisors while completing simple, routine tasks. She is capable of superficial interactions with the general public. She could adapt to basic changes in routine and assignments found in the workplace for simple, routine tasks.

(AR 26.)

In light of Plaintiff's RFC, the ALJ concluded Plaintiff could not perform her past relevant work as an automobile detailer and a janitor. The ALJ noted that Plaintiff was fifty years old on the alleged disability onset date, making her "an individual closely approaching advanced age[,]" and that she had "at least a high school education[.]" (AR 32.) The ALJ further noted that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills[.]" *Id.*

Considering Plaintiff's age, education, work experience, and RFC, ALJ Levin determined at Step Five that jobs exist in significant numbers in the national economy which Plaintiff could perform, including garment sorter, marker, and mail clerk. As a result, the ALJ concluded Plaintiff was not disabled.

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013)

(citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).

It is the Commissioner who resolves evidentiary conflicts, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Hum. Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

The court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case[.]" *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted) (first alteration in original). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

**B.   Whether the ALJ Erred in Failing to Make Findings Regarding Plaintiff's Manipulative Impairments.**

Plaintiff argues remand is necessary because the ALJ failed to discuss or make findings regarding her manipulative impairments, particularly as they relate to her ability to engage in reaching or handling activities. She contends her diagnoses and the clinical evidence of joint pain and tenderness and widespread pain throughout her body, as described by her treating and the examining physicians, support an RFC limitation in manipulative functions. The Commissioner responds that Plaintiff had a duty to prove

greater limitations than those assessed by the ALJ. Because Plaintiff challenges only the ALJ's decision with regard to her manipulative impairments, her other impairments are addressed in a more cursory manner.

On May 20, 2015, because she was experiencing lower back pain radiating to her left leg, x-rays were taken of Plaintiff's lumbar spine and showed moderate disc space narrowing at the L5-S1 level consistent with disc degeneration. (AR 727-28.) A MRI performed in September 2016 also showed findings consistent with degenerative disc disease. (AR 476.) Approximately two months later, Plaintiff was diagnosed with lumbar facet syndrome with myelopathy and was given a medial branch facet injection, after which her condition improved and she returned to work fulltime. (AR 483.)

On February 14, 2017, Plaintiff complained of severe migrating fibromyalgia pain "in multiple locations." (AR 409.) The next month, Plaintiff complained of right arm pain "to approximately the elbow." Anne Vitaletti-Coughlin, MD, Plaintiff's treating physician, assessed neck pain and weakness in Plaintiff's right arm. (AR 436.) An x-ray of Plaintiff's cervical spine in March 2017 showed degenerative joint disease and cervical kyphosis as well as multilevel degenerative changes in the lumbar spine resulting in central spinal canal and left neural foraminal stenosis. (AR 504-05.) Dr. Vitaletti-Coughlin noted that Plaintiff's neck range of motion from chin to the chest was provocative to the right arm, chin to left positive, and a positive right Spurling's.[2] (AR 509.) Dr. Vitaletti-Coughlin found weak right finger flexors, observed Plaintiff walked slowly, and administered an epidural. (AR 509-10.) Plaintiff reported she stopped working in September 2017 because she became "increasingly sicker[,]" her pain level was exacerbated, and her "fatigue got terribly bad." (AR 117.)

---

[2] A Spurling test is an:

> evaluation for cervical nerve root impingement in which the patient extends the neck and rotates and laterally bends the head toward the symptomatic side; an axial compression force is then applied by the examiner through the top of the patient's head; the test is considered positive when the maneuver elicits the typical radicular arm pain.

Stedman's Medical Dictionary (2014), *available at* Westlaw STEDMANS 908330.

7

In September 2017, Dr. Vitaletti-Coughlin diagnosed Plaintiff with an anxiety disorder, right low back pain, right buttock pain, and fibromyalgia. (AR 393.) A MRI showed mild facet joint changes and degenerative changes of the SI joint bilaterally. *Id.* Dr. Vitaletti-Coughlin observed Plaintiff's antalgic gait on the right and diffuse tenderness across her lumbosacral spine over the right SI joint. *Id.* Plaintiff had full range of motion in her back, her right lateral side bending provoked back pain, and her left lateral side bending provoked the right back and left pain. *Id.* Plaintiff's maneuvers were all positive for right iliac compression, Newton's, Gaenslen's, and FABERs. (AR 394.)

Dr. Vitaletti-Coughlin made similar findings on February 22, 2018 and diagnosed Plaintiff with lumber facet syndrome with myelopathy. A medial branch facet was administered at Copley Hospital. (AR 432-34.) In the spring of 2018, Dr. Vitaletti-Coughlin discussed options for right leg pain and noted that, even though Plaintiff was no longer working, she continued to experience upper, mid, and low back pain; pain in her hands and arms; and pain from the right low back that radiated down the side of the right leg and crossed over the top of the foot when Plaintiff is on her feet for a long period of time. (AR 397.) Dr. Vitaletti-Coughlin noted Plaintiff appeared in some distress "with a fair amount of pain behavior[,]" had an antalgic gait at a rapid rate, and had diffuse tenderness across the lumbar spine and SI joints bilaterally. *Id.* Plaintiff reported that she had "been doing some work at home in preparation for the maple syrup season." *Id.*

In May 2018, Plaintiff received another epidural injection. (AR 392.) On May 14, 2018, Dr. Vitaletti-Coughlin completed a Health Care verification form in which she opined that Plaintiff had debilitating medical conditions of fibromyalgia and osteoarthritis. (AR 390.) On that same date, Dr. Vitaletti-Coughlin noted that Plaintiff "looks very well[.]" (AR 391.) In October of 2018, Plaintiff reported that medical marijuana was a "godsend" and that 800 mg of ibuprofen "helped a[]lot" (AR 403) so that by October 2018 she could use a treadmill daily. (AR 28.)

In November 2018, Plaintiff sought treatment at Copley Hospital for intense, stabbing chest pain, which was concerning for acute coronary syndrome. (AR 423.) Additional symptoms noted were joint pain due to fibromyalgia. (AR 456.) Plaintiff

8

returned to Copley Hospital on December 5, 2018 for anxiety, panic, and fibromyalgia, after which Dr. Vitaletti-Coughlin increased Plaintiff's dosage of Cymbalta.

In January 2019, Plaintiff began treatment with Jeri Wohlberg, FNP, who assessed that Plaintiff's anxiety management on Cymbalta was reasonable because it was "providing her with some relief[,]" that she suspected the diagnosis of fibromyalgia was correct, and that Plaintiff had a generalized anxiety disorder and a panic disorder. (AR 464-65.) Plaintiff continued treatment with Nurse Wohlberg on a regular basis thereafter. (AR 468, 610, 624, 711, 716, 720.) In February 2019, Nurse Wohlberg noted Plaintiff had chronic pain all over her body and used marijuana daily with "good relief." (AR 469, 587.) In May 2019, Nurse Wohlberg recorded Plaintiff was feeling slightly worse because she was doing more, including gardening, but was having a "good result" with a low dose of tramadol for her fibromyalgia pain. (AR 610.)

In March 2019, Plaintiff saw Dr. Jones for evaluation and treatment of widespread pain. (AR 590.) In her initial evaluation, Dr. Jones concurred with the diagnosis of fibromyalgia and observed widespread tenderness over Plaintiff's upper and low back and myofascial tender points present throughout. During a follow up treatment session, Dr. Jones noted pain in Plaintiff's joints, fibromyalgia, chronic pain, and back pain as well as widespread tenderness over the upper and low back and myofascial tender points throughout. (AR 608.) However, Dr. Jones also observed "preserved" range of motion in the extremities at that time. (AR 609.)

On March 5, 2020, Nurse Wohlberg noted that Plaintiff was pursuing disability "which I do support[,]" and opined that Plaintiff was unable to work due to her medical issues. (AR 711.) Plaintiff reported that tramadol was "quite helpful[,]" (AR 712) but she nonetheless "deals with a lot of pain and fatigue." (AR 716.) On May 26, 2020, Nurse Wohlberg noted that Plaintiff's symptoms were stable and partially controlled with tramadol and set up an appointment for Plaintiff with rheumatology. (AR 720.) Nurse Wohlberg submitted a General Assistance Exemption Form, dated March 17, 2020, wherein she listed Plaintiff's diagnoses as anxiety, depression, and fibromyalgia and opined that these conditions would exempt Plaintiff from training or employment

requirements. (AR 719.)

On February 1, 2020, Andrea Carey, APRN, performed a consultative examination for the state agency and found that Plaintiff exhibited palpable joint tenderness bilaterally in all joints, especially in the upper extremities. (AR 702.) Nurse Carey observed intact nerves and reflexes; no sensory deficits; full strength; intact coordination and fine manual motor dexterity; and normal range of motion in Plaintiff's shoulders, elbows, wrists, hands, and cervical spine. (AR 701-03.) She noted that Plaintiff "can handle objects with both gross and fine manual motor dexterity" and opined that Plaintiff's pain behavior "seemed exaggerated for [the] amount of touch applied." (AR 704.)

State agency physical reviewers Cajsa Schumacher, MD, and Leslie Abramson, MD, submitted substantially similar assessments in February and May of 2020, respectively. They found that Plaintiff's severe impairments were degenerative disc disease, fibromyalgia, depressive disorder, anxiety disorder, and trauma. (AR 150, 164.) They further opined that Plaintiff was capable of light work activity and had no manipulative limitations. (AR 152-53, 165-66.)

State agency mental health reviewers Karin Towers, PhD, and Thomas Reilly, PhD, submitted nearly identical assessments finding Plaintiff's severe mental impairments were depressive disorder, anxiety disorder, and trauma disorder. (AR 150, 164.) They found that Plaintiff had a "marked" limitation in her ability to carry out detailed instructions and "moderate" limitations in her abilities to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary tolerance to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 154.) They opined that Plaintiff could sustain the mental demands associated with carrying out simple routine tasks over the course of a routine workday/workweek within acceptable attention, persistence, and pace tolerances. (AR 154, 167.)

At the ALJ's hearing, Plaintiff testified that she has "a lot of discomfort and pain

in [her] hands[, fingers, and wrists] all the time." (AR 124.) She testified that she requires assistance opening jars and cooking and submerges her hands in warm water to dull the pain. (AR 125.) In her January 6, 2019 Function Report, Plaintiff stated her ability to reach and use her hands were affected by her illness. (AR 290.)

The ALJ reviewed Plaintiff's medical records, which also indicate Plaintiff reported tenderness and pain in her hands and wrists during visits with Dr. Vitaletti-Coughlin, Nurse Wohlberg, and Dr. Jones. The ALJ noted that Plaintiff's "medically determinable impairments [of degenerative disc disease and fibromyalgia] could reasonably be expected to cause the alleged symptoms[,]" and she "described having pain in her hands and wrists." (AR 27.) However, he further noted that Plaintiff's "allegations, if fully persuasive, would warrant additional work-related restrictions, but her allegations are not fully persuasive as they are not entirely supported by or consistent with the medical evidence of record." *Id.* In his decision, the ALJ provided examples of Plaintiff's reported symptoms conflicting with her physical presentation. *See, e.g.*, AR 30 ("She testified that her pain and symptoms are constant, but the record overall shows that her conditions appear generally stable and well controlled with temporary exacerbations in symptom severity."). Evidence of Plaintiff's manipulative limitations consisted primarily of self-reported symptoms of pain, which must be considered but which do not automatically translate into manipulative limitations. In her medical records, Plaintiff's complaints regarding pain in her hands were largely limited to a complaint in April 2018 (AR 347), a report of "all over body pain" in February 2019, and Nurse Carey's February 2020 observation of tenderness bilaterally across all joints. (AR 704.) Plaintiff does not challenge the ALJ's conclusion that her subjective complaints of pain were not wholly supported by the evidence. (AR 27.)

The ALJ posed a hypothetical to the VE which included that Plaintiff was limited to light work; that she could understand and remember simple instructions; could sustain all concentration, persistence, and pace for simple tasks; and could do so over the course of a routine workday and workweek. The hypothetical also included that Plaintiff could participate in typical social interactions with coworkers and supervisors when completing

11

routine tasks. The ALJ added certain postural limitations, finding that Plaintiff was capable of superficial social interactions with the general public, and that she could adapt to basic changes in routine assignments found in the workplace when performing simple, routine tasks. (AR 136-37.) Based on these hypothetical facts, the VE testified that Plaintiff could not perform her past work but that she could perform three positions which qualified as light exertional work: garment sorter, DOT#222.687- 014; marker, DOT#920.687-126; and mail clerk or mail sorter, DOT#209.687-026. (AR 137.) The VE further testified that there would be no jobs if an individual was off-task more than ten percent of the workday or had work absences of two or more times a month. (AR 138-39.)

The VE testified that the identified jobs required frequent reaching or use of the upper extremities except marker, which only required occasional reaching or use of the upper extremities. (AR 139.) Upon further questioning from Plaintiff's representative, the VE later agreed that all three identified jobs required frequent reaching, handling, and fingering.[3] Under the DOT, the marker job, DOT #920.687-126, requires "constant" reaching and handling. Exhibit A, 1991 WL 687992 (G.P.O.).

An RFC determination represents "the most [a claimant] can still do despite [their] limitations[,]" and is determined based on "all the relevant evidence" in the record,

---

[3]

> Q: Just a couple quick questions about the jobs that you, you identified – excuse me — under hypothetical number one. I assume that with those three jobs that you identified, in terms of reaching and using the upper extremities, they're all at least frequent, if not constant?
>
> A: They are all frequent, with the – well, actually, the, the marker is actually occasional, I believe. But the other two are frequent.
>
> Q: I think it's frequent. I believe it's frequent.
>
> A: Okay, then it's frequent. I don't have it open in front of me, but –
>
> Q: I, I, I'm pretty familiar. I think it's frequent. I'm, I'm actually sure it's frequent. In, in terms of handling, I think they're all frequent as well.
>
> A: Yes.

(AR 139-40.)

including evidence of both severe and non-severe medically determinable impairments. 20 C.F.R. § 404.1545(a)(1)-(2). "In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). "[A]n ALJ is free . . . to choose between properly submitted medical opinions" in rendering his analysis, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal alterations, quotation marks, and citations omitted), and need not "reconcile every conflicting shred of medical testimony" as long as the ALJ "acknowledge[s] relevant evidence or explain[s] his implicit rejection of it." *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90 (W.D.N.Y. 2000) (citations omitted).

"[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition" a limitation. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (internal quotation marks and citation omitted). As the ALJ correctly observed, Plaintiff's medical providers noted her pain was adequately controlled with prescription medication, ibuprofen, and medical marijuana. (AR 403, 469, 587, 611, 712.) Plaintiff was able to perform household chores arguably inconsistent with her alleged symptom severity, such as preparing for the maple syrup season, using a treadmill, and gardening. The ALJ noted that Dr. Jones observed a preserved range of motion in Plaintiff's upper extremities (AR 609); that Nurse Carey found intact fine motor dexterity and normal range of motion in Plaintiff's elbows, wrists, and hands; and Plaintiff was not observed to be in pain or discomfort at every appointment. (AR 701-03.)

In rendering his decision, the ALJ relied on the opinions of state agency physicians Drs. Schumacher and Abramson, who reviewed the record evidence and concluded Plaintiff's severe degenerative disc disease and fibromyalgia did not cause manipulative limitations. "[T]he opinion of a non-examining source, such as a state agency physician, can constitute substantial evidence in support of an ALJ's determination where, as here, it is consistent with the record as a whole." *Diaz v. Colvin*,

2014 WL 2931583, at *6 (W.D.N.Y. June 27, 2014). To the extent Plaintiff asks the court to reweigh the evidence, "[i]t is for the SSA, and not this court, to weigh the conflicting evidence in the record." *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

The ALJ further concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 27.) The ALJ was "not required to accept [Plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of [her] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ noted that Nurse Carey recorded Plaintiff's pain response seemed exaggerated. Plaintiff had ample opportunity to supplement the record post-hearing and chose not to do so. She does not challenge the ALJ's conclusions regarding the severity of her symptoms.

Because the ALJ's determination that Plaintiff did not have manipulative impairments that required further limitations in her RFC was supported by substantial evidence, and because the correct legal standards were applied, the court must affirm that determination on appeal. *See Cichocki*, 729 F.3d at 175-76.

### C. Whether the Appeals Council Erred in Not Reversing Plaintiff's Claim Based Upon the New Medical Record from Dr. Jones.

Plaintiff argues that remand is necessary because Dr. Jones's treatment note, which she submitted to the Appeals Council, sufficiently altered the weight of the evidence and created a reasonable probability that the ALJ would have reached a different conclusion. The court disagrees.

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). "Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (quoting 20

C.F.R. § 404.970(b)). "When the Appeals Council denies review after considering new evidence, [the court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez*, 77 F.3d at 46.

If the Appeals Council denies a request for review, "the ALJ's decision, and not the Appeals Council's, is the final agency decision." *Lesterhuis*, 805 F.3d at 87. "The Appeals Council's reasoning for denying review therefore has no bearing on the court's review of the Commissioner's decision." *Jessica R. v. Berryhill*, 2019 WL 1379875, at *4 (D. Vt. Mar. 27, 2019). The issue that remains is "whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require" remand. *Canady v. Comm'r of Soc. Sec.*, 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4, 2017).

On September 18, 2020, Dr. Jones noted that Plaintiff reported experiencing more pain in her hands and numbness in her right arm in the previous six months since her last appointment. (AR 38.) Dr. Jones observed a normal range of motion in Plaintiff's fingers but extreme tenderness to palpation such that Plaintiff pulled her hands and elbows away when Dr. Jones tried to examine them. (AR 41.) Dr. Jones opined that Plaintiff could not participate in a meaningful way in EMG/NCTS diagnostic purposes in light of her response. *Id.* Plaintiff also reported tenderness in her elbows and shoulders but showed preserved elbow range of motion. *Id.* She was tender over the bilateral cubital tunnels, but a Tinel's test was negative. *Id.* Dr. Jones noted there was "some evidence of possible carpal tunnel or ulnar nerve entrapment as well as osteoarthritis[,]" and opined that Plaintiff "[c]an try splints applied to [her] wrists[.]" *Id.* Dr. Jones scheduled no further testing or follow-up. More importantly, she imposed no restrictions on Plaintiff's activities.

Although Plaintiff is correct that Dr. Jones's treatment note records Plaintiff's complaints regarding pain and tenderness in her hands, Dr. Jones found no manipulative limitations based on these self-reports. *See Merkley v. Comm'r of Soc. Sec.*, 2017 WL 4512448, at *4 (N.D.N.Y. Oct. 10, 2017) ("A source's reliance on a claimant's subjective reports rather than the medical evidence constitutes a good reason for affording less

weight to a medical opinion, even from a treating physician.'"). Dr. Jones's recommendation for treatment was conservative, did not include further testing or diagnostics, and simply recorded her advice that Plaintiff try splints applied to her wrists. It thus does not alter the weight of the evidence so dramatically as to require remand. *See Canady*, 2017 WL 5496071, at *11.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse the decision of the Commissioner (Doc. 11) is DENIED, and the Commissioner's motion to affirm (Doc. 12) is GRANTED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 31st day of October, 2022.

Christina Reiss, District Judge
United States District Court